## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION

No. 7:15-CV-00072-FL

| | |
|---|---|
| ETHEL MAE BETHEA, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-22, -24] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Ethel Mae Bethea ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on November 1, 2011, alleging disability beginning August 25, 2011. (R. 15, 177-90). Her claim was denied initially and upon reconsideration. (R. 15, 59-110). A hearing before the Administrative Law Judge ("ALJ") was held on September 20, 2013, at which Claimant, represented by counsel, and a

vocational expert ("VE") appeared and testified. (R. 15, 25-58). On November 27, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 12-24). On February 2, 2015, the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred in (1) giving less than controlling weight to the opinion of a treating physician, (2) presenting a legally insufficient hypothetical to the VE, and (3) improperly evaluating Claimant's credibility. Pl.'s Mem. [DE-23] at 9-19.

3

## IV. FACTUAL HISTORY

### A.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date. (R. 17). Next, the ALJ determined Claimant had the following severe impairments: cardiac dysrhythmia, residual effects of implantation of a pacemaker, essential hypertension, degenerative joint disease of the knees, and obesity. *Id.* The ALJ also determined Claimant had the nonsevere impairments of seizure disorder, GERD, kidney stones, hyperthyroidism, gastritis, esophagitis, and urinary tract infections. (R. 18). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC") finding Claimant has the ability to perform light[1] work with the following specific limitations: sit for six hours out of an eight-hour workday; stand and/or walk for six hours out of an eight-hour workday; lift and/or carry 10 pounds frequently and 20 pounds occasionally and push or pull in accordance with the above-mentioned lifting limitations; never climb ladders, scaffolds, or ropes; occasionally climb ramps and stairs; frequently balance and stoop; occasionally kneel and

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

crouch; never crawl; and avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and to hazards such as unprotected heights and dangerous machinery. (R. 18-23). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. *Id.* At step four, the ALJ concluded Claimant is capable of performing past relevant work as a folder, cafeteria worker, and poultry dresser. (R. 23-24).

## B. Claimant's Testimony at the Administrative Hearing

At the time of the administrative hearing, September 20, 2013, Claimant was 63 years old and lived alone, except for times when her adult daughter stayed with her. (R. 31-32). She has a fifth-grade education and cannot read well. (R. 32, 47). She had not worked since her alleged onset date of August 25, 2011, but received some short-term disability benefits in 2011 and 2012. (R. 33). Claimant has no health insurance and does not receive Medicaid benefits, but had been drawing Social Security retirement benefits since turning 62 years old. (R. 45). Claimant had past work experience as a sewing machine operator, a poultry processor, a folder, and a hospital food-tray preparer. (R. 33-39). These jobs required Claimant to stand for a majority of the day. (R. 39).

Claimant is five feet two inches tall and weighed 212 pounds, which she indicated was normal, at the time of the administrative hearing. (R. 31). She experiences dizziness, her legs give out, she cannot stand for long, and she has to lie down for an hour or two at home. (R. 40). Claimant has been diagnosed with arthritis and experiences pain in both knees, but the left-knee pain is more severe. *Id.* She previously underwent arthroscopic surgery on her left knee. (R. 40-41). Claimant's knee pain is exacerbated by walking and standing and she has utilized a cane, which she had at the hearing, since her surgery in 2011. (R. 41). She also experiences swelling in her knees and feet on a daily basis. (R. 43). Claimant's right leg gives out on her about twice a week,

5

depending on how much she walks, and she has fallen on occasion. (R. 42). She experiences dizziness as much as twice a day, lasting an hour to an hour and a half, and she lies down and props up her head for relief. (R. 42-43). Claimant also takes medication for her dizziness, which helps some. (R. 43). She has high blood pressure every time she sees her doctor, despite taking her medication as prescribed, and sometimes she passes out and has to go to the hospital. (R. 43-44). Claimant has a seizure disorder that is controlled with medication and experienced her last seizure in 2012. (R. 44-45). She smokes a pack of cigarettes every other day. (R. 31).

Claimant estimated she can stand for 30 minutes before having to sit down, if she does not fall first, sit for an hour before having to get up and move, and walk for a quarter of a mile before having to stop and rest. (R. 46). Claimant can pick up a glass of water with her right hand, but it causes her hand to drop, and she can lift a gallon of milk but not for long. (R. 46-47). She has a driver's license but does not drive often or long distances. (R. 32, 47). Sometimes Claimant does chores such as mopping, cooking, and washing the dishes, but she has to stop and rest as she goes and sits on a stool at the stove and sink. (R. 48-49). Her daughter also helps her with some chores. (R. 49).

Claimant utilizes a motorized cart when grocery shopping. (R. 49-50). She attends church every Sunday, visits her friends in their homes, and visits the senior center building. (R. 50). Claimant spends her days sitting under a tree outside when it is not too hot and otherwise watches television inside. *Id.* She also takes daily naps for an hour to an hour and a half and tries to keep her feet propped up to reduce swelling. (R. 50-51). In total, Claimant spends four to five hours resting during what would be a typical 9:00 a.m. to 5:00 p.m. workday, and about 15 days out of the month are bad days when she is mostly limited to sitting around the house. (R. 51).

6

## C.  Vocational Expert's Testimony at the Administrative Hearing

Dr. Susan Wells Brown testified as a VE at the administrative hearing. (R. 52-56). The VE classified Claimant's past work experience as follows: sewing operator, Dictionary of Occupational Titles ("DOT") code 787.685-018, semi-skilled with an SVP of 3, and light exertion; folder, DOT code 583.685-042, unskilled with an SVP of 2, and light exertion; poultry dresser, DOT code 525.687-070, unskilled with an SVP of 2, and light exertion; meat trimmer, DOT code 525.684-054, unskilled with an SVP of 2, and medium exertion; and cafeteria worker, DOT code 311.677-010, unskilled with an SVP of 2, and light exertion. (R. 53). The ALJ asked the VE to assume a hypothetical individual of the same age, education, and prior work experience as Claimant with the ability to sit for six hours out of an eight-hour day, stand and/or walk for six hours out of an eight-hour day, lift and carry 20 pounds occasionally and ten pounds frequently, and to push and pull in accordance with those lifting and carrying limitations, never climb ladders, scaffolds or ropes but occasionally climb ramps or stairs, frequently balance and stoop, occasionally kneel and crouch, never crawl, and avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation and to hazards such as unprotected heights and dangerous machinery. (R. 53-54). The VE indicated the hypothetical individual could perform Claimant's past work as a folder, cafeteria worker, and poultry dresser. (R. 54). The VE also indicated there would be no transferrable skills to sedentary work from Claimant's past semi-skilled work as a sewing operator. *Id.*

Claimant's counsel asked the VE to assume with respect to the first hypothetical that the individual had an additional limitation of requiring a sit/stand option approximately every 30 minutes to change position, and the VE opined the limitation would preclude the previously-listed jobs. *Id.* Counsel next inquired regarding the impact of missing two days a month of work, and the VE opined

7

it would preclude any competitive employment. (R. 55). At the ALJ's request, the VE identified two occupations that would satisfy the criteria of counsel's first hypothetical, including the sit/stand option: silver wrapper, DOT code 318.687-018, unskilled with an SVP of 1, light exertion, and 113,000 jobs nationally, 3,500 in North Carolina; and assembly, DOT code 723.684-018, unskilled with an SVP of 2, light exertion, and 75,000 jobs nationally, approximately 800 in North Carolina. (R. 55). The VE indicated the job numbers reflected a fifty percent reduction for the sit/stand option and that due to the limitations, primarily the educational level, those would be the only occupations. (R. 55-56). The VE indicated her testimony was consistent with the DOT with the exception of her opinion regarding the sit/stand option, which the DOT does not cover, but stated that she based her opinion on professional training and 37 years of vocational placement experience. (R. 56).

## V. DISCUSSION

### A. The ALJ's RFC Determination

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Claimant contends the ALJ erred when assessing Claimant's RFC by (1) giving less that controlling weight to the opinions of Dr. Rowson, Claimant's treating physician, and (2) conducting an improper credibility analysis. Pl.'s Mem. [DE-23] at 9-15, 17-19. Defendant in response contends the ALJ properly weighed Dr. Rowson's opinions and correctly determined that Claimant's subjective complaints were not fully credible. Def.'s Mem. [DE-25] at 15-27.

8

### i. Opinion Evidence

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v.*

9

*Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), he must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8.

On November 1, 2011, Claimant saw her primary care provider, Dr. Rowson, for follow up with complaints of sinus drainage and congestion, and it was noted Claimant was "otherwise doing quite well." (R. 537). Claimant reported having recently been seen by her cardiologist and she told Dr. Rowson it was her cardiologist's opinion that she was completely and totally disabled from her previous work due to her heart condition and other cardiac-related issues. *Id.* Dr. Rowson made the following note:

I have discussed with the [patient] her previous job duties, the fact that her job was somewhat strenuous, and in light of these issues I am in agreement with [her] cardiologist that the previous job she had been employed at is not something that she can return to. I agree with [his] opinion that she should he considered completely and totally disabled.

*Id.*

On September 4, 2013, Dr. Rowson completed a Medical Source Statement ("MSS") regarding Claimant's abilities and limitations caused by her impairments. (R. 663-69). Dr. Rowson noted Claimant's diagnoses of asthma, seizure disorder, hearing loss, myocardial infarction, coronary artery disease, thyroid disease, pacemaker, and kidney stones. (R. 663). He also noted Claimant experiences shortness of breath, dizziness, chest pain, and "DOE" and that depression and anxiety contributed to the severity of her pain. (R. 663-64). Dr. Rowson opined that Claimant's pain was "often" severe enough to interfere with her attention and concentration and that Claimant was moderately limited in her ability to deal with work stress. (R. 664). Dr. Rowson also indicated that

10

Claimant, on a regular and continuous basis (meaning eight hours a day for five days a week), could do the following: sit for 15 minutes before changing positions or walking, must elevate her legs to minimize pain, and sit for no longer than one hour total; stand or walk for 15 minutes, after which she would need to sit for 15 minutes, and stand or walk for no longer than one hour total; in addition to normal breaks would require additional rest breaks for a total of two hours of resting time; occasionally lift and carry up to 10 pounds; and occasionally balance, stoop, rotate the neck, and reach, handle, or finger with either hand. (R. 665-68). Finally, Dr. Rowson noted Claimant did not require an assistive device for ambulation and estimated she would miss work about twice a month as a result of her impairments. (R. 668-69).

The ALJ evaluated Dr. Rowson's opinions and concluded they were entitled to little weight. (R. 22-23). The ALJ acknowledged Dr. Rowson's "long-term and regular treating relationship with claimant" and that those factors would usually weigh in favor or according the opinions great weight. (R. 22). However, the ALJ discounted Dr. Rowson's opinions because he is not a specialist either in cardiology or orthopedics, his opinion that Claimant is "completely and totally disabled" is conclusory, not explained or supported, and is on an issue reserved to the Commissioner. *Id.* In accordance with S.S.R. 96-5p, the ALJ went on to evaluate the medical evidence to determine the extent to which the opinion is supported by the record. *Id.* The ALJ concluded Dr. Rowson's opinions were not supported by the medical evidence. *Id.*

The ALJ first noted that the records do not include the opinion from Claimant's cardiologist on which Dr. Rowson's own 2011 opinion is premised. *Id.* The ALJ also cited Dr. Rowson's failure to offer support or explanation, such as clinical signs or laboratory findings, for his 2011 opinion that Claimant could not return to her past work, which Dr. Rowson characterized as "strenuous," and the

11

ALJ further noted this was a vocational opinion that ignored Claimant's other past relevant work that was less strenuous. *Id.* Finally, the ALJ found Dr. Rowson's 2011 opinion inconsistent with his own contemporaneous treatment notes and those of Claimant's cardiologist, both indicating Claimant was doing well without significant complaints. *Id.* As one example, the ALJ pointed out that there was no support in the treatment notes for Dr. Rowson's assertion that Claimant experiences shortness of breath, dizziness, chest pain, or "DOE" or that Claimant experiences depression and anxiety. (R. 22-23). The ALJ also found no support in the treatment notes for Dr. Rowson's assertion that Claimant must elevate her legs or lie down to relieve fatigue and pointed out that Claimant herself testified she could sit for one hour at a time before needing to move around, while Dr. Rowson opined she could sit only for 15 minutes at a time. (R. 23). In sum, the ALJ found Dr. Rowson's opinions lacked supportability and consistency. *Id.*

Claimant concedes that the treatment notes of her cardiologist do not contain an opinion stating that she is disabled. Pl.'s Mem. [DE-23] at 12. However, Claimant argues that it can be inferred from the record that Dr. Rowson reviewed Claimant's medical records from her August 2011 hospitalization and cardiologist before rendering his 2011 opinion, and further speculates that Claimant's cardiologist possibly provided such an opinion in connection with Claimant's short-term disability claim that is not part of the treatment notes. *Id.*

There is no opinion from Claimant's cardiologist, Dr. Short, in the record. "Claimant bears the burden of presenting medical evidence of h[er] impairment to the ALJ." *Schaller v. Colvin,* No. 5:13-CV-334-D, 2014 WL 4537184, at *9 (E.D.N.C. Sept. 11, 2014) (unpublished) (citing 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner . . . may

12

require."); 20 C.F.R. § 404.1512(c) (explaining it is the claimant's burden to furnish the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations)). When a claimant is represented by counsel, the ALJ is "allowed to presume that [Claimant] presented his [or her] best case." *Id.* (citing *Aytch v. Astrue*, 686 F. Supp. 2d 590, 599 (E.D.N.C. 2010) ("[W]hen an applicant for social security benefits is represented by counsel the [ALJ] is entitled to assume that the applicant is making his strongest case for benefits.") (quoting *Johnson v. Chater*, 969 F. Supp. 493, 509 (N.D. Ill. 1997))).

In considering Dr. Rowson's agreement with the cardiologist's opinion, as reported by Claimant, the ALJ appropriately considered the relevant factors under 20 C.F.R. §§ 404.1527 and 416.927, including examining and treatment relationship, supportability, consistency, and specialization. (R. 22-23). The ALJ pointed out that the treatment notes from both Drs. Rowson and Short fail to support Dr. Rowson's opinion. *Id.* In fact, in the November 2011 treatment note in which Dr. Rowson opines that Claimant is disabled, he also indicates that Claimant was seen for follow up with complaints of sinus drainage and congestion but "is otherwise doing quite well." (R. 537); *see also* (R. 538) (Dr. Rowson's Oct. 4, 2011 treatment note stating Claimant is doing well except for sinus drainage and congestion); (R. 539) (Dr. Rowson's Sept. 7, 2011 treatment note stating Claimant needed paperwork related to her work status post-implantation of her pacemaker and that Claimant "has no significant complaints at the present time," "no chest pain to report," no shortness of breath, and "[h]er surgical site seems to be healing nicely."); (R. 567-70) (Dr. Short's Jan. 5 and Mar. 22, 2012 treatment notes stating Claimant's blood pressure was high due to not taking her medication and that she was given samples and directed to consult with her primary care doctor regarding assistance with obtaining medications); (R. 571) (Dr. Short's Oct. 31, 2011

13

treatment note stating Claimant was doing very well since her pacemaker was implanted with the exception of elevated blood pressure due to not taking her medication and she was provided samples); (R. 645) (Dr. Rowson's June 1, 2012 treatment note indicating Claimant had trace edema in her lower extremities but was otherwise doing "reasonably well" and was prescribed a trial fluid pill); (R. 646-47) (Dr. Rowson's Mar. 27 and May 2, 2012 treatment notes stating Claimant had been given information and paperwork to receive patient assistance in getting her medications filled, including those started by her cardiologist). Accordingly, the ALJ weighed the appropriate factors in considering Dr. Rowson's November 2011 opinion that Claimant was disabled based on her heart condition and other cardiac related issues, and the ALJ's decision in this regard is supported by substantial evidence.

Claimant also argues Dr. Rowson's September 2013 MSS is supported by objective medical evidence, including Claimant's knee x-rays showing degeneration, which was surgically repaired in the left knee but not in her right knee, and Dr. Rowson's diagnosis of edema. Pl.'s Mem. [DE-23] at 14. However, as noted above, Drs. Short and Rowson found only trace edema in Claimant's lower extremities (R. 645, 679), and on other occasions Claimant was observed to have no edema (R. 613, 675, 681, 683). Additionally, Dr. Rowson's MSS lists no diagnoses or symptoms related to knee pain, but rather cites Claimant's asthma, seizure disorder, hearing loss, myocardial infarction, coronary artery disease, thyroid disease, pacemaker, and kidney stones, which cause shortness of breath, dizziness, chest pain, and "DOE." (R. 663). Finally, as the ALJ recognized, Dr. Rowson is not an orthopedist (R. 22), and Claimant's orthopedist, Dr. Smid, did not provide an opinion regarding her functional impairments. Dr. Smid's July 13, 2011 treatment note indicates Claimant had no pain in her left knee post-arthroscopy, and he performed an intra-articular steroid injection

14

for right knee pain. (R. 402). Claimant received no further treatment from Dr. Smid, and there are no subsequent reports of knee pain in Dr. Rowson's treatment notes. Accordingly, the ALJ did not err in discounting Dr. Rowson's September 2013 MSS for lack of supportability and consistency and the decision to do so is supported by substantial evidence.[2] Moreover, contrary to Claimant's contention, Pl.'s Mem. [DE-23] at 16, the ALJ did not err in failing to account for limitations in Dr. Rowson's MSS, including the sit/stand option or that Claimant would miss two days of work per month, when formulating a hypothetical to the VE where the ALJ appropriately gave the opinion little weight as it was unsupported by the record. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (concluding that ALJ's hypothetical question need only include those impairments supported by record).

Finally, Claimant argues that while the ALJ appeared to give the greatest weight to the opinion of Dr. Levin, a non-examining state agency consultant, he failed to incorporate Dr. Levin's limitation of only occasional pushing and pulling with bilateral lower extremities. Pl.'s Mem. [DE-23] at 15. However, as the government correctly notes, the descriptions in the DOT for the jobs of poultry dresser and cafeteria worker do not indicate that pushing and pulling with the lower extremities is required. *See* DOT 525.687-070 & 311.677-010; *Powell v. Astrue*, No. SKG-10-02677, 2013 WL 3776948, at \*9 (D. Md. July 17, 2013) (unpublished) ("Several courts in the Fourth Circuit have found it to be harmless error for an ALJ to omit a limitation in the hypothetical question

---

[2] Claimant also argues that the ALJ acknowledged Claimant's "PTSD, depression and migraines" and, thus, erred in discounting Dr. Rowson's opinions as unsupported regarding the impact of Claimant's depression and anxiety. Pl.'s Mem. [DE-23] at 14-15. The ALJ correctly notes that there is no evidence in the record regarding a mental impairment. (R. 23). It appears the ALJ may have erroneously included the statement regarding "PTSD, depression and migraines" necessitating mental restrictions in the RFC, because the RFC contains no mental restrictions. (R. 18, 23). In any event, this is but one of several reasons provided by the ALJ in support of his opinion and, thus, any error in this regard was harmless.

15

when the resulting jobs presented by the VE accommodate the limitation.") (citations omitted). Accordingly, any error in this regard was harmless.

## ii. Credibility

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But

16

neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at \*2; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at \*4-8 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

The ALJ considered Claimant's testimony regarding her daily activities, impairments, symptoms, limitations, and treatment, as well as her medical records, in evaluating Claimant's credibility. (R. 19-21). In discounting Claimant's testimony, the ALJ noted (1) Claimant's good response to treatment, including no continued reports of knee pain after surgery and no complaints concerning her heart after the pacemaker implantation; (2) Claimant's complaints of dizziness and passing out are not reflected in her reports to treating sources; and (3) Claimant continues to spend limited resources on cigarettes instead of medications. (R. 21). Claimant contends that the ALJ's reasons for finding her not fully credible are unsupported by the record. Pl.'s Mem. [DE-23] at 17-19.

Claimant concedes she had a good response to treatment from her prescribed medications and the surgery on her left knee, but points out she had pain in her right knee that returned after she received an injection and that by October 2011 she had lost her insurance and was unable to afford her medications or treatment from a specialist. *Id.* at 18. Claimant also contends that her repeated efforts to stop smoking enhance her credibility. *Id.* at 18-19. Social Security Ruling 96-7p provides that when assessing credibility, an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or

17

records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." S.S.R. 96-7p, 1996 WL 374186, at \*7 (July 2, 1996). However, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment," such as "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." *Id.* at \*7-8. Thus, a claimant's inability to pay for prescribed treatment which he would otherwise have pursued is a "justifiable cause" for failing to follow that treatment. S.S.R. 82-59, 1982 WL 31384, at \*4 (Jan. 1, 1982); *see Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him."). Social Security Ruling 82-59 additionally requires that a claimant "show that he has exhausted all free or subsidized sources of treatment and document his financial circumstances before inability to pay will be considered good cause." *Gordon*, 725 F.2d at 237. "[T]he burden of proof is on the Commissioner to establish unjustified noncompliance by substantial evidence." *Taylor v. Astrue*, No. 7:11-CV-162-FL, 2012 WL 3637254, at \*8 (E.D.N.C. Aug. 1, 2012) (unpublished) (citations omitted), *adopted by* 2012 WL 3636923 (Aug. 22, 2012).

There is some indication in the medical records that Claimant at times failed to take her medication because she could not afford to fill her prescriptions. (R. 538, 567-70, 572, 646-47, 678-79). However, as the ALJ noted, those records also indicate that her doctors provided samples and assisted her with obtaining patient assistance to obtain her medications. (R. 19, 538, 567-70, 572, 646-47, 678-79, 709); *see Taylor*, 2012 WL 3637254, at \*8 (finding the ALJ established unjustified

18

compliance where Claimant was provided with free medication samples on numerous occasions and there were no records indicating Claimant's noncompliance resulted from a lack of available samples). Furthermore, at the administrative hearing, Claimant stated that she was taking Antivert for dizziness, as well as seizure medication, and was compliant with taking her blood pressure medication. (R. 43-45). Although Claimant testified that she had no health insurance and did not receive Medicaid benefits, she was receiving Social Security retirement benefits and never testified that she could not afford her medications. (R. 45). As the ALJ noted, even if Claimant could not afford to see a specialist, she did not complain of continued knee pain to her primary care physician, Dr. Rowson, from whom she did continue to receive care. (R. 20, 537-39, 645-47, 694-712). Finally, although Claimant argues that her lifelong addiction to tobacco makes it unlikely she could quit smoking without medication or other treatment, Dr. Rowson provided trial smoking-cessation medications and referred her to a smoking-cessation counselor. (R. 342, 555, 645); *see Thompson v. Colvin*, No. 7:15-CV-00026-BO, 2016 WL 1069654, at \*3 (E.D.N.C. Mar. 16, 2016) (unpublished) (finding no error in the ALJ's consideration of claimant continuing to purchase cigarettes despite claiming an inability to afford medication) (citing *Hooker v. Astrue*, No. 5:11-CV-243-FL, 2012 WL 7805502 (E.D.N.C. June 28, 2012) (unpublished) (upholding ALJ's credibility analysis which relied, in part, on claimant's purchasing of cigarettes and alcohol in finding claimant less than fully credible), *adopted by* 2013 WL 1246742 (Mar. 26, 2013)). Accordingly, the ALJ did not err in considering Claimant's good response to treatment and continued smoking in the credibility analysis.

Claimant also takes issue with the ALJ's finding that Claimant's complaints of dizziness and passing out are not reflected in her reports to treating sources. Pl.'s Mem. [DE-23] at 18. The ALJ

19

acknowledged Claimant's testimony that she experienced dizziness on a daily basis, lasting for hours, but found that she never reported to her doctors having dizziness of such frequency or severity. (R. 20, 42-43). Claimant points out that in November 2010 she went to the emergency room after feeling dizzy at work (R. 430), on August 25, 2011, she was admitted for a syncopal episode, dizziness, and headache (R. 476), on January 5, 2012, she reported to Dr. Short that she passed out at church but did not go to the hospital (R. 682), and on May 2, 2012, she passed out and was taken to the hospital (R. 598). These few episodes do not contradict the ALJ's finding that Claimant never reported to her doctors that she experienced dizziness of the frequency or severity to which she testified at the administrative hearing—up to twice daily, lasting an hour to an hour and a half. (R. 43); *see Hyatt v. Colvin*, No. 7:14-CV-8-D, 2015 WL 789304, at *12 (E.D.N.C. Feb. 24, 2015) (unpublished) ("It is within the province of the ALJ to determine credibility, and in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the record evidence.") (citing *Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations.")). Furthermore, the treatment notes indicate these episodes of dizziness either predated the implantation of her pacemaker (R. 430, 476-80, 487-89) or were associated with elevated blood pressure when not taking her medication (R. 682) or a seizure condition (R. 598), which she testified is controlled so long as she takes her medication (R. 43-45). Accordingly, the ALJ did not err in considering contradictions between Claimant's testimony regarding the severity of her symptoms and the medical records in the credibility analysis.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment

on the Pleadings [DE-22] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-24] be ALLOWED, and the final decision of the Commissioner be UPHELD.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **June 9, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

SUBMITTED, this the 26 day of May 2016.

Robert B. Jones, Jr.
United States Magistrate Judge

21